UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **KEVIN MUTH (#631935)**<br>**Plaintiff** | **CIVIL ACTION NO. 5:16-CV-893;**<br>**SECTION "P"** |
| **VERSUS** | **JUDGE HICKS** |
| **PAM HEARN, ET AL.,**<br>**Defendants** | **MAGISTRATE JUDGE HAYES** |

**REPORT AND RECOMMENDATION**

Before the Court is the civil rights complaint (42 U.S.C. § 1983) of pro se Plaintiff Kevin Muth (#631935), filed on June 23, 2016. (Doc. 1). Plaintiff was granted leave to proceed in forma papueris on June 27, 2016. (Doc. 4). Plaintiff is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the David Wade Correctional Center ("DWCC") in Homer, Louisiana. Plaintiff complains about the medical care he received at DWCC. Plaintiff names as defendants Dr. Pam Hearn, and Nurses Tammy Poole, Joel Williams, and Michelle Norris.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

**Factual Allegations**

Plaintiff alleges that he informed the medical department at DWCC of his medical conditions, and he signed waivers so DWCC could obtain his medical records from his treating physicians. (Doc. 1, p. 3).

On August 24, 2015, Plaintiff was transported to University Health Clinic in Shreveport, Louisiana, for treatment for tremors, problems with balance, and carpal tunnel syndrome. (Doc. 1, p. 3). The doctor prescribed splints and Neurontin, but Dr. Hearn did not follow the recommendation. (Doc. 1, p. 3).

Plaintiff alleges that his problems with balance cause a "drunken walk," which is apparent to non-medical staff members. (Doc. 1, p. 3).

On February 3, 2016, Plaintiff was transferred to a new work crew assigned to field work. Plaintiff alleges that he cannot keep up the march with the rest of the line because of his tremors and balance problems. (Doc. 1, p. 3).

Plaintiff alleges that he made numerous sick call requests for his tremors, balance problems, and carpal tunnel issues, but no doctor appointment was scheduled. (Doc. 1, pp. 3-4). However, Plaintiff states that a nerve conductivity test was performed on March 8, 2016, which confirmed that Plaintiff had carpal tunnel syndrome. (Doc. 1, p. 4). The carpal tunnel causes Plaintiff pain and difficulty eating, washing, and sleeping.

Plaintiff continued to make sick calls because of the lack of treatment provided, and he received a disciplinary report for malingering. (Doc. 1, p. 4).

According to the response to Plaintiff's administrative grievance, Plaintiff was transferred to DWCC on February 16, 2015, with a documented medical history of chronic pain, high blood pressure, arthritis, and gastric reflux disease. Dr. Hearn reviewed the intake evaluation on March 2, 2015, and discontinued Zyrtec. (Doc. 1, p. 10). On March 3, 2015, Dr. Hearn examined Plaintiff to determine an appropriate duty status. Dr. Hearn documented a history of neck surgery, and Plaintiff was given a duty status to accommodate the medical restrictions. (Doc. 1, p. 10). Plaintiff was referred to a neurology clinic, and his records were requested from West Jefferson Hospital. (Doc. 1, p. 10).

Plaintiff submitted two sick calls reporting toe pain, right side pain, and discolored stool. Plaintiff was referred to the physician. On April 2, 2015, Plaintiff was examined by Dr. Fuller to

address the toe pain. A diagnosis of gout was made, and Plaintiff was prescribed medication for treatment. (Doc. 1, p. 10).

Plaintiff was evaluated by Dr. Fuller on April 6, 2015, to address the pain in Plaintiff's side and the discolored stool. Plaintiff's lab work indicated a slightly elevated bilirubin level. Orders were given to monitor the bilirubin level by repeating the lab work in one month. (Doc. 1, p. 10).

On April 15, 2015, Plaintiff made a sick call for hearing problems. Nurse Martin documented that Plaintiff could hear her speaking in a soft voice at a distance of 3-4 feet. (Doc. 1, p. 10). Nurse Martin determined that no treatment was warranted. (Doc. 1, p. 10).

Plaintiff was followed in the chronic care clinic to control Plaintiff's chronic condition of high blood pressure. On April 28, 2015, it was determined that Plaintiff's blood pressure was not under adequate control, and his medications were increased. (Doc. 1, p. 10).

Plaintiff made a sick call request on June 11, 2015, seeking a renewal of his duty status. Dr. Hearn wrote for the duty status to continue until Plaintiff could be examined by the neurology clinic. (Doc. 1, p. 10).

Plaintiff made another sick call on July 24, 2015, reporting worsening right upper quadrant pain. Plaintiff was referred to a physician for evaluation. On July 28, 2015, Dr. Hearn examined Plaintiff, and diagnostic testing was ordered. (Doc. 1, p. 10). A kidney, ureter, and bladder x-ray showed no obstruction. A chest x-ray showed no infiltrate. The urine test was normal, and the bilirubin test was normal. (Doc. 1, p. 10). Plaintiff's kidney function was normal, and there was no evidence of dehydration. (Doc. 1, p. 10).

Plaintiff was examined in a neurology clinic on August 24, 2015, and unspecified recommendations for care were given. (Doc. 1, p. 10). The recommendations were reviewed by

3

DWCC. (Doc. 1, p. 10).

Plaintiff made a sick call on October 19, 2015, reporting urinary symptoms. Dr. Fuller examined Plaintiff on October 27, 2015, and prescribed medication to control the urinary problems and to help with pain. Dr. Fuller also gave Plaintiff a duty status and scheduled a follow-up appointment. (Doc. 1, p. 10).

On December 3, 2015, Dr. Fuller examined Plaintiff again and denied Plaintiff's request for a more limited duty status. Plaintiff's pain medication was adjusted, and his urinary medication was increased. (Doc. 1, p. 10).

As of December 17, 2015, Plaintiff had an upcoming appointment with the DWCC physician for a yearly chronic clinic evaluation, and an appointment for an EMG study to further investigate Plaintiff's neurologic problems. (Doc. 1, pp. 10-11).

An April 5, 2016 response to a subsequent grievance filed by Plaintiff indicates that Plaintiff has been treated for prostatitis, given a limited duty status due to his history of cervical fusion, had pain medications adjusted, and received an annual physical. Moreover, Plaintiff had an upcoming appointment with a neurology clinic. (Doc. 1, p. 15).

Plaintiff attached a copy of his duty status for April 25, 2016, through July 25, 2016, which limited his work assignments to lifting no more than five pounds, no pushing or pulling, limited bending and stooping, bottom bunk, and no physical activities. (Doc. 1, p. 35).

**Law and Analysis**

Medical care claims of convicted prisoners are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, a plaintiff must establish that the defendant prison officials knew of, and then disregarded, an excessive risk to the

plaintiff's health and safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle v. Gamble, 429 U.S. 97 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. Wilson v. Seiter, 501 U.S. 294 (1991).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citing Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)). Disagreement with diagnosis or treatment cannot support a claim of deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

Plaintiff received medical treatment on March 2, 3, April 2, 6, 15, 28, June 11, July 24, 28, August 24, October 19, 27, and December 3 of 2015, and February 3, March 8, 9, 21, 25, April 4, 5, 23, 26, and May 2, 9, 10 of 2016. (Doc. 1, pp. 20-34). He has been treated at DWCC, the University Health Hospital and a neurology clinic. He has received x-rays, nerve conduction studies, prescription medications, and other medical testing. The complaint and exhibits establish that Plaintiff's complaints have certainly not been ignored. The fact that Plaintiff disagrees with his diagnosis and treatment does not state a viable constitutional claim. See Banuelos, 41 F.3d at 235; Varnado, 920 F.2d at 321. Even if the care Plaintiff received was not "the best money could buy," Plaintiff cannot establish a constitutional violation. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("deliberate indifference exists wholly independent of an optimal standard of care"); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or

"best" medical care available). Plaintiff has not alleged deliberate indifference to a serious medical need.

Plaintiff complains about his job assignment. A prisoner has no constitutional right to a specific work assignment. Prison officials have broad administrative and discretionary authority over the institutions they manage, and lawfully incarcerated persons retain only a narrow range of protected liberty interests. See Hewitt v. Helms, 459 U.S. 460, 467 (1983). Classification of inmates is one of those administrative functions. See Wilkerson v. Maggio, 703 F.2d 909, 911 (5th Cir. 1983).

Plaintiff was provided a limited duty status based on his medical history. (Doc. 1, pp. 15, 35). He is limited to no lifting over five pounds, no pushing or pulling, limited bending and stooping, as well as a bottom bunk. (Doc. 1, p. 35). Although Plaintiff was reassigned to Crew 1, a field crew, there are jobs for inmates with limited duty statuses on the crew. (Doc. 1, p. 15). Thus, Plaintiff's medical needs have been considered in determining his duty status.

For the foregoing reasons, **IT IS RECOMMENDED** that the § 1983 complaint be **DENIED** and **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the

district judge before a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

**THUS DONE AND SIGNED** in chambers in Monroe, Louisiana, this 30th day of August, 2016.

Karen L. Hayes
United States Magistrate Judge